IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

WAL-MART STORES, INC.,

        Plaintiff,

    v.                                    Civil No. 04-160-AS

GULF INSURANCE COMPANY,          OPINION AND ORDER
EMPLOYERS INSURANCE OF
WAUSAU, also known as
EMPLOYERS INSURANCE COMPANY
OF WAUSAU, and CERTAIN UNDER-
WRITERS, MEMBERS, AND INSURERS
AT LLOYD'S LONDON, ENGLAND,
INCLUDING SYNDICATE 318,

        Defendants.

---

ASHMANSKAS, Magistrate Judge:

Defendant insurance companies move for summary judgment arguing that the damages sought by plaintiff Wal-Mart Stores, Inc. ("Plaintiff"), are excluded under the express terms of the insurance policies. Plaintiff argues that there is a genuine issue of material fact with regard to the cause of the damages and that the insurance policies are ambiguous and should be construed in favor

of Plaintiff.

## Background

For the most part, the underlying facts of this action are not in dispute. Defendants Gulf Insurance Company; Employers Insurance of Wausau; and Certain Underwriters, Members, and Insurers at Lloyd's London England, including Syndicate 318 (collectively "Defendants"), issued insurance policies covering physical damage to Plaintiff's property (the "Policies"). During the term of the Policies, the concrete floor in Plaintiff's distribution center in Hermiston, Oregon, began curling. Plaintiff alleges that the curling made it dangerous to use the floors, caused damage to the wheels of the forklifts, requiring additional maintenance, and caused the edges of the slabs to break down. The total cost of repairing and replacing the floor, associated structures and related damage was approximately $1.5 million. Plaintiff notified Defendants of the curling and resulting damages in a timely manner. Defendants refused to pay and Plaintiff filed this action.

## Policy Language

The Policies all contain the same language. The Policies "insured against all risk of physical loss of or damage to property described herein, * * * except as hereinafter excluded." The relevant exclusion provides that:

This policy does not insure:

* * *

b.  against the cost of making good defective design or specifications, faulty material, or faulty workmanship; however, this exclusion shall not apply to loss or damage resulting from such defective design or specifications, faulty material or faulty workmanship.

/ / / / /

## Legal Standard

Rule 56 of the Federal Rules of Civil Procedure allows the granting of summary judgment:

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c). "[T]he requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." <u>Anthes v. Transworld Systems, Inc.</u>, 765 F. Supp. 162, 165 (Del. 1991) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986))(emphasis in original).

The movant has the initial burden of establishing that no genuine issue of material fact exists or that a material fact essential to the nonmovant's claim is absent. <u>Celotex v. Catrett</u>, 477 U.S. 317, 322-24 (1986). Once the movant has met its burden, the onus is on the nonmovant to establish that there is a genuine issue of material fact. <u>Id</u>. at 324. In order to meet this burden, the nonmovant "may not rest upon the mere allegations or denials of [its] pleadings," but must instead "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see <u>Celotex</u>, 477 U.S. at 324.

An issue of fact is material if, under the substantive law of the case, resolution of the factual dispute could affect the outcome of the case. <u>Anderson</u>, 477 U.S. at 248. Factual disputes are genuine if they "properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." <u>Id</u>. at 250. On the other hand, if after the court has drawn all reasonable inferences in favor of the nonmoving party, "the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Id</u>. at 249-50 (citations omitted).

## Discussion

Plaintiff asserts that the law of Arkansas controls this action while Defendants argue that Oregon law applies. Federal courts exercising diversity jurisdiction apply the choice of law

principles of the forum state. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941). Oregon applies a two-step interest analysis test to resolve conflicts of law. Lilienthal v. Kaufman, 239 Or. 1 (1964). First, the court determines whether an actual conflict exists by weighing the interests and policies of potential forum states. Seattle-First Nat'l Bank v. Schriber, 51 Or. App. 441, 448 (1981). The court must determine whether both jurisdictions have "a substantial interest, because, if one . . . has no such interest, it is unnecessary to proceed." Id. (quoting Tower v. Schwabe, 284 Or. 105, 108 (1978)). If there is a significant conflict, the second step is to determine which forum has the most significant relationship to the occurrence of the parties. See Lilienthal, 239 Or. at 16.

Plaintiff argues that Arkansas law applies because the Policies were negotiated in Arkansas, issued to an Arkansas company and the monthly payments of the loans for the financing of the insurance premiums were made from Arkansas. Additionally, the Policies provide that Arkansas law shall govern the cancellation of the Policies and the statute of limitations for an action for recovery of any loss under the Policies. Finally, Plaintiff argues that "unless a single jurisdiction's substantive law covers these insurance policies no matter where the loss occurs, a single provision of the policies may end up having up to ten, twenty, or even fifty different meanings since Wal-Mart has stores in all fifty states." Opposition Memo at 9.

According to Plaintiff, Arkansas law requires a contract to be interpreted in its plain, ordinary and popular sense. Castaneda v. Progressive Classic Ins. Co., 125 S.W.3d 835, 838 (Ark. Ct. App. 2003). If the language of an insurance policy is ambiguous, or there is doubt or uncertainty as to its meaning and it is susceptible to two or more interpretations, the court will interpret the policy in favor of the insured. Nationwide Mutual Ins. Co. v. Worthey, 861 S.W.2d 307, 314 (Ark.

1993). Under Oregon law, contracts are construed to effectuate the objectively reasonable intentions of the parties. Oregon School Employees Assoc. v. Rainier School Dist. No. 13, 311 Or. 188, 194 (1991). Unambiguous contracts must be enforced according to their terms. Id. In determining if a contract provision is ambiguous and is capable of more than one sensible and reasonable interpretation, the court may consider the circumstances under which it was made, including the situation of the subject and of the parties, so that the judge is placed in the position of those whose language he is interpreting. O.R.S. 42.220; Sunset Coatings Co. v. State ex rel. Dep't. of Transport., 62 Or. App. 53, 56 (1983). If a court concludes that the disputed terms of an insurance policy are ambiguous, the court will "construe it against the insured as its drafter." Clinical Research Institute of Oregon, P.C. v. Kemper Insurance Companies, 191 Or. App. 595, 600 (2004).

For the purposes of this case, there is no conflict between the laws of the states of Arkansas and Oregon. The court will apply the law of Oregon in construing the terms of the Policies.

Defendants assert that Plaintiff's claim under the Policies is for damages caused by faulty design and/or workmanship. Plaintiff argues that the curling and resulting damages were caused by defective specifications. Defendants are willing to concede, for the purposes of this motion only, that the curling was caused by defective specifications. The court accepts this concession for this limited purpose and now addresses the question of what damages, if any, Defendants are obligated to pay as a result of the defective specifications.

The language of the Policies specifically excludes the cost of "making good defective design or specifications, faulty material, or faulty workmanship; however, this exclusion shall not apply to loss or damage resulting from such defective design or specifications, faulty material or faulty workmanship." Defendants interpret this provision as excluding all costs related to the defective

specifications, including the curling of the floors and the damages caused by the curling. Plaintiff reads the language to exclude only the cost of replacing the defective design specifications.

The common understanding of the phrase "make good" is to perform a task in the manner expected. For example, to make good on a promise means to complete whatever was promised in a satisfactory manner. Both the Oregon courts and this court have used the phrase "make good" in exactly this manner. Martiszus v. Washington County, 325 F.Supp.2d 1160, 1170 (D.Or. 2004), Chiles v. Robertson, 94 Or. App. 604, 622 (1989).

Here, the Policies exclude the cost of making good defective specifications - - the cost required to put the insured in the position it would have been had the specifications not been defective. This includes the cost of correcting the specifications as well as the costs incurred in correcting any damage caused by the defective specifications.

The exception to the exclusion provides coverage for loss or damage resulting from the defective specifications. Plaintiff argues that this language pulls all of its damages, with the exception of the cost of correcting the specifications, back under the Policies' protection. The court does not agree.

In a case construing language virtually identical to that in the Policies, the court in Allianz Insurance Company v. Impero, 654 F.Supp. 16 (E.D. Wash. 1986)[1] held that the policy excluded the costs of making appropriate repairs to defective concrete walls that were not in accord with the specifications. The court rejected the insured's assertion that the cost of repairing the defective walls was damage resulting from faulty workmanship and, therefore, covered under the policy.

---

[1] The parties did not cite to, and the court was unable to find, any Oregon cases addressing similar language.

> The defective concrete caused no damage to any other portion of the structure, other person or property. The sole claim is for the cost of correcting the deficiencies in the wall. Had the wall, as a result of the deficiencies in the concrete, collapsed and caused damage to some other portion of the work, or to the equipment of a subcontractor or some similar thing, we would have a different case.

Id. at 18.

District courts in the Ninth Circuit has considered similar language with similar results. In Sapiro v. Encompass Insurance, 221 F.R.D. 513, 521 (N.D.Cal. 2004), the district court enforced an unambiguous and conspicuous faulty workmanship clause and held the insured could not recover for "losses caused by the defects in the design and construction of the building." The court limited the exception in the policy for "any ensuing loss" to a "loss that is separate and independent from the original peril" and denied the insured's claim for reconstruction costs, finding that they are "neither separate nor ensuing by any legitimate measure; they are the price of repairing the predicate damage." Id. at 522.

In a case closer to home, Judge Stewart found that an ensuing loss clause "does not reinsert coverage for excluded losses, but reaffirms coverage for secondary losses ultimately caused by excluded perils. * * * In other words, an 'ensuing loss provision does not cover loss caused by the excluded peril, but rather covers loss caused to *other* property wholly separate from the defective property itself." Prudential Property & Casualty Ins. Co. v. Lillard-Roberts, 2002 WL 31495830 at 19 (D.Or. 2002)(citations omitted).

> For instance, if defectively installed roof flashing allows water to leak into the wall cavity, then subsequent damage caused by water, such as dry root or mold, to the interior of the house is caused by the faulty workmanship and is not covered. If, however, the water migrates into an electrical box and causes an electrical short which in turn causes a fire, then the fire damage is a covered "ensuing loss."

Id.

The parties agree that the cost of replacing the defective specifications is excluded. The

court finds that the costs associated with repairing and replacing the concrete floors and associated structures is directly related to and a part of the faulty construction caused by the defective specifications and are also excluded. Plaintiff also seeks related damages and compensatory damages, including business interruption, loss of business income and extra expenses. It appears that at least a portion of the related damages covers the cost of additional maintenance to the wheels of Plaintiff's forklifts damaged by the curling of the defective concrete floor. This type of related damage is a loss that is separate and independent of the defective specification and is recoverable under the Policy.

## Conclusion

Defendants' motion (#21) for summary judgment is GRANTED with regard to the cost of correcting the defective specifications and costs associated with repairing and replacing the concrete floors and associated structures caused by the defective specifications and DENIED with regard to related damages, such as additional maintenance on Plaintiff's forklifts caused by the curling of the floors.

DATED this 23rd day of May, 2005.

    /s/ Donald C. Ashmanskas
    DONALD C. ASHMANSKAS
    United States Magistrate Judge